**In the Matter of Thomas DANIEL FOR The ESTABLISHMENT OF CARTWAY.**

No. CX–01–1820.

Court of Appeals of Minnesota.

May 28, 2002.

James R. Cope, Andrew R. Peterson, Virginia, MN, for appellant Donald Schoch.

Alan L. Mitchell, St. Louis County Attorney, Timothy O. Lee, Assistant County Attorney, Duluth, MN, for respondent St. Louis County.

Considered and decided by SHUMAKER, Presiding Judge, KALITOWSKI, Judge, and WILLIS, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant challenges the district court's grant of summary judgment affirming the St. Louis County Board of Commissioners' decision to grant Daniel's petition for a cartway over appellant's land. Appellant argues that lake-only access is sufficient access within the meaning of Minn.Stat. § 164.08, subd. 2(a) (2000), and Daniel's petition for a cartway should have been denied. Because lake-only access is not sufficient access within the meaning of the statute, we affirm.

## FACTS

In 1995, Thomas Daniel bought lakefront acreage on Lake Vermillion. Appellant Donald Schoch owns Lake Vermillion land that abuts Daniel's property. Daniel's land can be reached either by crossing the lake or by traveling upon other people's lands. Until 1999, Daniel always used the lake to reach his property.

A heavy windstorm on July 4, 1999, toppled trees throughout the Lake Vermillion area. After the storm, Schoch built a primitive road on his land and partly on state-owned land to use in removing felled timber and debris. Daniel asked Schoch if he could use the road for the same purpose. Schoch said that he could not.

Daniel then petitioned the St. Louis County Board of Commissioners for the grant of a cartway, which would be located primarily on Schoch's primitive road. The board granted the cartway, finding that Daniel "does not have access to his property except across the property of others" and concluding that "the requested cartway is the most appropriate means of access" to Daniel's land. Schoch appealed to the district court.

Schoch also wrote to the department of natural resources to inquire whether Daniel could use DNR winter roads to remove the trees and debris from his property. The DNR indicated its willingness to allow use of winter roads:

The DNR Division of Forestry has harvested timber in the past in this locale using a network of winter roads. We are happy to facilitate reasonable requests to use our network of winter roads for timber management purposes.

After Schoch appealed the board's decision to the district court, the county moved for summary judgment. The district court granted the motion, holding that the board did not abuse its legislative discretion in granting the cartway. Schoch appeals from the summary judgment.

## ISSUES

1. Did the district court err in granting summary judgment because, as a matter of law, it found that there was no legal definition of the term "access" in the context of Minn.Stat. § 164.08, subd. 2 (2000)?

2. Did the district court err in not ordering an evidentiary hearing to determine whether Daniel had access within the statutory meaning of Minn.Stat. § 164.08, subd. 2 (2000)?

## ANALYSIS

On appeal from summary judgment, we ask whether there exists any genuine issue of material fact for trial and whether the district court erred in its application of the

law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

■ There is no dispute about the ways in which Daniel can reach his property. Thus, there is no fact issue for trial. The question for resolution is the meaning of the word "access" in the law under which the board granted Daniel permission to erect a cartway. The application of a statute to undisputed facts results in a legal conclusion, which we review de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

■ If a landowner has no access to his property except over the lands of others, a municipal board may grant a cartway over those lands:

> Upon petition presented to the town board by the owner of a tract of land containing at least five acres, who has no access thereto except over the lands of others * * *, the town board by resolution shall establish a cartway at least two rods wide connecting the petitioner's land with a public road.

Minn.Stat. § 164.08, subd. 2(a) (2000).

Schoch contends that Daniel does not qualify for the grant of a cartway because he has access to his land from Lake Vermillion and he could also have access over DNR winter roads.

Because the term "access" in section 164.08, subd. 2(a), is ambiguous as to its scope, we may properly construe the term. *See* Minn.Stat. § 645.16 (2000) (instructing that when the words of a law are not explicit, the intention of the legislature may be ascertained by considering various factors). Among the factors we may consider in ascertaining the intent of the statute are "the mischief to be remedied," "the object to be attained," and "the consequences of a particular interpretation." *Id.* And we are to presume that the statute

is not intended to produce an unreasonable result. Minn.Stat. § 645.17 (2000).

■ It is apparent that the mischief to be remedied is the predicament of a landowner who has no way to reach a public road from his property except by crossing lands owned by others. The object of the statute is to provide a remedy for the mischief by empowering the governing municipal body to grant to the landowner a cartway and thereby to allow the lawful crossing of others' properties. Of course, even when we consider the statutory factors of the mischief to be remedied and the object of the legislation, we might still reasonably conclude that lake access satisfies legislative intent.

But the lake-access interpretation is problematic because inevitably the vicissitudes of the Minnesota climate can produce conditions that will prevent even lake access. Seasonal transformations might create ice on the lake that is too thin to traverse by foot or vehicle and yet is too thick to navigate by watercraft. Thus, the consequence of the lake-access interpretation is that the legislature intended that access less than 100% of the time would nevertheless be sufficient to disqualify a landowner from eligibility for a cartway. This would not be a reasonable interpretation of the cartway statute, and we reject it as being indicative of probable legislative intent.

Although the parties have cited no controlling authorities, caselaw gives us some guidance in reaching the conclusion that "access" as used in the cartway statute does not include lake access. In *State ex rel. Rose v. Town of Greenwood*, 220 Minn. 508, 20 N.W.2d 345 (1945), the court determined whether the petitioner had access to a town road from his land. The evidence showed that petitioner owned three parcels of land designated as lots one, two, and seven. Lot one was a half-acre and was

unused. The town road could be reached through this lot. However, lot one was completely separated from lots two and seven by a lake. Lots two and seven totaled 92 acres and constituted petitioner's farm. *Id.* at 509, 513, 20 N.W.2d at 346–48.

Although petitioner was able to reach the town road from lot one, he was not able to reach the road from lots two and seven because of the lake. *Id.* at 513, 20 N.W.2d at 348. The evidence showed that petitioner once had access to the town road from his farm by another road on the west side of the lake, but petitioner had granted all access rights to a third party. *Id.* at 514, 20 N.W.2d at 348. There was another road that petitioner used by license or permission revocable at will, but the license or permission had been revoked. *Id.* Finally, the evidence showed that the lake could be navigated by rowboat, but that it was muddy and "it was impracticable to build a road across it." *Id.* at 513–14, 20 N.W.2d at 348. Based upon this evidence, the court found that petitioner "was entitled to a cartway." *Id.* at 514, 20 N.W.2d at 348.

Similarly, Daniel only has direct access to his land over Lake Vermillion. It is impractical to build a road across the lake, and thus Daniel has no other access to a public road except over the land of others.

Schoch also urges that, because the DNR said it would allow use of winter roads for "timber management purposes," Daniel would have access through those roads. The district court considered evidence of the DNR's offer but determined that the permissive use of the winter roads was neither certain nor permanent and that the county board had no authority to require the DNR to allow Daniel to use the winter roads. The district court's ruling is supported by *Kroyer v. Bd. of Supervisors,* 202 Minn. 41, 277 N.W. 234

(1938). In that case, the supreme court held that the landowner was entitled to a cartway because his access to a public road was over private property which that be crossed only with the property owner's consent. *Id.* at 42–43, 277 N.W. at 235.

Schoch relies principally on *Roemer v. Bd. of Supervisors of Elysian Township,* 283 Minn. 288, 167 N.W.2d 497 (1969), and *Mackie v. United States,* 194 F.Supp. 306 (D.Minn.1961), to support his argument that Daniel has access to a public road. The Roemer court concluded that the cartway statute "does not contemplate establishing an alternative right-of-way where an owner already has means of ingress and egress." *Roemer,* 283 Minn. at 291, 167 N.W.2d at 499. *Mackie* involved a claim of an implied easement by necessity. *Mackie,* 194 F.Supp. at 307.

*Roemer* was premised on a determination that the landowner already had a means of ingress and egress. Here, the board and the district court determined that Daniel does not have a means of ingress or egress across land. Because we have interpreted the cartway statute to require access by land and not by water, we too conclude that Daniel does not have a means of ingress from and egress to a public road. Thus, *Roemer* does not control.

*Mackie,* a federal district court case, dealt with a common-law implied easement by necessity. Although there might be similarities between a common-law easement by necessity and a statutory cartway, we are called upon to interpret and apply the statute and not the common law. Thus, *Mackie* is not instructive.

■ Schoch contends that he is entitled to a fact hearing to determine whether Daniel has access within the meaning of the cartway statute. But there is no genuine fact issue for trial. Daniel does not

dispute the fact that he can and does use the lake to gain access to his property. Thus, whether he has some type of access is not in issue. The question is whether lake access is sufficient access under the statute to make Daniel ineligible for a cartway. This statutory interpretation is purely a matter of law.

Furthermore, Schoch provided no evidence at the summary-judgment stage to show the existence of any genuine issue of material fact. *See* Minn. R. Civ. P. 56.05 (party resisting summary-judgment motion must present specific facts showing a genuine issue for trial); *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (party resisting summary judgment must do more than rest on mere averments; a genuine issue must be established by substantial evidence).

Finally, Schoch has included in his index materials presumably from the proceedings before the county board. Except for pages 1–27 and 38, none of the items in the index was included in the district court file, and, therefore, are not properly part of the appellate court record and cannot be considered. *See* Minn. R. Civ.App. P. 110.01 (the record on appeal consists of papers filed in the district court, the exhibits, and the transcript); *Fabio v. Bellomo,* 489 N.W.2d 241, 246 (Minn.App.1992), *aff'd,* 504 N.W.2d 758 (Minn.1993) (we will strike documents included in a party's brief that are not part of the appellate record). Since these documents were not before the district court in deciding whether to grant summary judgment, we will not consider these documents on appeal.

We also note that the board's order was not included in the district court file, but since Schoch challenges the board's order, and the district court refers to specific conclusions in the board's order, we will presume that the board's order was considered by the district court and is part of the district court record. *Cf. Rigwald v. Rigwald,* 423 N.W.2d, 701, 704 n. 5 (Minn. App.1988) (taking notice of document not part of district court record which was "critical" to the appeal).

■ In its brief, the county refers to statements Schoch made at the hearing before the board, but the transcript of that hearing was not made a part of the district court record. We may selectively disregard improper references to evidence outside the record without striking the entire brief. *AFSCME Council No. 14 v. Scott County,* 530 N.W.2d 218, 222–23 (Minn. App.1995), *review denied* (Minn. May 16 & June 14, 1995). Thus, statements Schoch made at the board's hearing and the improper documents in his index are stricken because neither is part of the appellate record. *See* Minn. R. Civ.App. P. 110.01 (the record on appeal consists of papers filed in the district court, the exhibits, and the transcript).

### DECISION

The district court did not err in granting summary judgment, affirming the determination of the St. Louis County Board of Commissioners that a landowner did not have "access" to his property when the only means of ingress and egress was over a lake.

**Affirmed.**