John KENNEDY, Respondent,

v.

PEPIN TOWNSHIP OF WABASHA COUNTY, Appellant.

No. A08–1921.

Supreme Court of Minnesota.

July 15, 2010.

Peter D. Ekstrand, Ekstrand Law Office, PLC, Wabasha, MN, for respondent.

Mary D. Tietjen, Troy J. Gilchrist, Kennedy & Graven, Minneapolis, MN, for appellant.

## OPINION

MEYER, Justice.

Appellant Pepin Township of Wabasha County (Township) sought review of an opinion of the court of appeals reversing its decision as to the location of a cartway to be built for access to property owned by petitioner John Kennedy.[1]  At issue is whether Minn.Stat. § 164.08 (2008) allows a township to provide cartway access to

---

1. Kennedy is the respondent on appeal, but under the statute he is the petitioner at the hearing before the Township Board.  For ease of use, we refer to Kennedy as petitioner in the proceedings before the Township Board.

only some portion of a property owner's land. We affirm in part, reverse in part, and remand for further proceedings.

Kennedy owns 26.6 acres of undeveloped land along Highway 61 in Pepin Township. Only about 5 acres of Kennedy's land atop the bluff is buildable; the remaining approximately 20 acres are steeply sloped down to the highway.

County Road 10 runs roughly parallel to Highway 61 along the top of the bluff. The Pepin Heights apple orchard lies between petitioner's land and the county road; access to the orchard is by means of a private driveway off the county road. Until 2000, petitioner could access his property by means of an easement from County Road 10 across the orchard. That easement was eliminated by judicial action in 2000, and since that time petitioner has been unable to reach agreement for a new easement with the orchard owner.

In 2004, Kennedy petitioned the Township Board to establish cartway access to his land, as provided by Minn.Stat. § 164.08 (2008). Subdivision 2 of section 164.08 requires a town board to establish, at the request of a landowner, a cartway for access from a public road to a tract of land containing at least five acres that otherwise has no access. The statute further requires the petitioning landowner to pay compensation to the owner of land on which the cartway is built. *Id.*, subd. 2(c). It also provides that the petitioning landowner may be required to pay to construct the cartway itself unless the town board determines that establishment of the cartway is in the public interest. *Id.*, subd. 2(c), (d).

Petitioner's intended use for the land is not clear from the record. He indicates that he intended to subdivide the property for residential construction. However, at the hearing before the Township Board, petitioner also indicated a desire to keep the property in his family for use by his children and grandchildren. There was no dispute at the hearing that petitioner was entitled to a cartway to gain access to his land; rather, the question was where the cartway should be built. Essentially, three alternatives were presented to the Township Board. The first and least expensive alternative provided petitioner access to his property by means of a cartway off an existing private road intersecting Highway 61. However, because the Minnesota Department of Transportation does not permit residential access with a grade greater than 15 percent off a highway, petitioner could not have built a driveway from that cartway up the bluff to the usable 5 acres. The second alternative, an extension of the private road used by the orchard to access County Road 10, was estimated to cost $100,000 to construct. The third alternative, around the perimeter of the orchard, was longer and even more expensive, estimated to cost $300,000.

Petitioner and his appraiser advocated for the route through the orchard to the portion of petitioner's land at the top of the bluff. This route is the same route previously used to access petitioner's land. The orchard objected on several grounds. The orchard argued that the Township was under no obligation to provide access to any particular portion of petitioner's land. The orchard further stated that it required secure boundaries for its property to limit predators, discourage trespassers, and protect new varieties of apples it was developing under contract with the University of Minnesota. Finally, the orchard asserted that under section 164.08, the Board had discretion to deny petitioner's preferred route if another alternative is less damaging to affected land owners and in the public interest.

The Board, largely adopting the orchard's position, concluded that the route "most desirable," least costly, and least disruptive to adjoining property owners, was the first one, giving petitioner access from Highway 61 to the lower portion of his property.

Petitioner sought review by the Wabasha County District Court. After a hearing, the court issued an order affirming the decision of the Board. The court stated that it could "find no authority ... that states that the cartway must provide access to the entire parcel." The court of appeals reversed and remanded. *Kennedy v. Pepin Twp. of Wabasha County,* 767 N.W.2d 30, 33 (Minn.App.2009). The court concluded that establishing a cartway for access to only an unusable portion of petitioner's land, from which there is no access to the usable portion of his property, did not satisfy the requirements of section 164.08. *Kennedy,* 767 N.W.2d at 32–33. The court rejected the Township's interpretation of "tract" to include all of the property owned by petitioner, noting that the statute from which the definition was drawn, Minn.Stat. § 272.03, subd. 6(a) (2008), was part of the tax code and there was "no authority for transporting this definition from the tax code to the cartway statute." *Id.* at 33. The court further relied on this court's decision in *State ex rel. Rose v. Town of Greenwood,* 220 Minn. 508, 20 N.W.2d 345 (1945), for the proposition that "when one portion of usable, landlocked property cannot be accessed due to the nature of the property, the access requirements of the cartway statute are not fulfilled even though another portion of the property is accessible." *Kennedy,* 767 N.W.2d at 33. The court therefore remanded the matter to the Township with instructions to establish a cartway across the orchard as "the most reasonable route to the useable portion of Kennedy's property."

We granted Pepin Township's petition for review. First, we address whether the court of appeals correctly held that the Township's selected route failed to fulfill the Township's obligation under Minn.Stat. § 164.08, subd. 2(a). Second, we determine whether the court of appeals erred in establishing the location of the cartway.

A township acting on a petition to establish a cartway "acts in a legislative capacity." *Lieser v. Town of St. Martin,* 255 Minn. 153, 158, 96 N.W.2d 1, 5 (1959). Therefore, we set aside a township's cartway determination only if "it appears that the evidence is practically conclusive against it, or that the local board proceeded on an erroneous theory of law, or that it acted arbitrarily and capriciously against the best interests of the public." *Id.* at 158–59, 96 N.W.2d at 5–6; *see also Trout Brook Realty Co. v. Town of Featherstone,* 173 Minn. 448, 450–51, 217 N.W. 499, 500 (1928) (applying same deference on review of a route selection under the cartway statute).

To determine whether the Township proceeded on an erroneous theory of law, we must interpret Minn.Stat. § 164.08, subd. 2(a). Statutory interpretation is a question of law that we review de novo. *Zurich American Ins. Co. v. Bjelland,* 710 N.W.2d 64, 68 (Minn.2006). Minnesota Statutes § 164.08, subd. 2(a) reads as follows:

Upon petition presented to the town board by the owner of a tract of land containing at least five acres, who has no access thereto except over a navigable waterway or over the lands of others, or whose access thereto is less than two rods in width, the town board by resolution shall establish a cartway at least two rods wide connecting the petitioner's land with a public road. A town board shall establish a cartway upon a

petition of an owner of a tract of land that, as of January 1, 1998, was on record as a separate parcel, contained at least two but less than five acres, and has no access thereto except over a navigable waterway or over the lands of others. The town board may select an alternative route other than that petitioned for if the alternative is deemed by the town board to be less disruptive and damaging to the affected landowners and in the public's best interest.

As relevant to this case, the statute obligates a township to establish a cartway to provide access to an owner of a tract of land who has no access to his or her land from a public road except over the land of others. The statute then gives the township discretion to select an alternative route for the cartway, taking into account the damage to affected landowners and the public's best interest. *Rose,* 220 Minn. at 514–15, 20 N.W.2d at 348.

■ There was no serious dispute at the hearing as to whether petitioner was entitled to a cartway—it was undisputed that access to his land was eliminated in 2000. The dispute centered on what type of access was required by the statute. Based on its interpretation of the statute, the Township concluded that it was not required to provide a cartway to the usable portion of the petitioner's land. The Township's conclusions of law state, "[t]here is nothing in the cartway statute that legally requires the Board to allow the establishment of a cartway to a particular portion of a tract of landlocked land." The Township confirmed this understanding at oral argument and conceded that the approved cartway did not provide meaningful access to petitioner's land because the cartway provided access only to the base of the steep bluff. The record as a whole, in conjunction with these statements and the ultimate route selection by the Board,

indicates that the Township proceeded on the belief that the statute requires it to provide a cartway that connects the public roadway to *any* point on the petitioner's tract of land, regardless of whether that connecting point provides meaningful access to the land. It was upon this interpretation of Minn.Stat. § 164.08, subd. 2(a), that the Township selected the route to the base of the bluff.

Petitioner argues, and the court of appeals concluded, that this interpretation must be rejected based on this court's holding in *Rose,* 220 Minn. at 514–15, 20 N.W.2d at 348. In *Rose,* we held that under the cartway statute the petitioner was entitled to a cartway that provided access to the usable portion of the land even though another portion of the land that was unusable connected to a public road. *Id.* at 513–14, 20 N.W.2d at 348. The petitioner in *Rose* owned a tract of land consisting of three contiguous lots. *See id.* at 513, 20 N.W.2d at 347–48. One of the lots was one-half acre in size and connected to a public road. *Id.* The other two lots contained petitioner's farm and totaled 92 acres of land. *Id.* at 513, 20 N.W.2d at 348. Lot one was separated from the other two lots by a body of water known as Schauer Lake. *Id.* at 513, 20 N.W.2d at 347–48. The evidence in the case was that it was a muddy lake and that it was impracticable to build a road across it. *Id.* at 513–14, 20 N.W.2d at 348. For 50 years the previous owners of the Rose land were given permission to use a driveway that crossed over several neighbors' land. Record on Appeal, Answer and Return to Writ of Mandamus, at 12, *Rose,* 220 Minn. 508, 20 N.W.2d 345. However, that path was never permitted by an easement and eventually Rose's ability to cross the path was inhibited by a neighbor erecting temporary fencing. Record on Appeal, Transcript of Testimony, at 34, *Rose,* 220 Minn. 508, 20 N.W.2d 345. Rose thus

petitioned for a cartway under the then-existing cartway statute, Minn.Stat. § 163.15 (1941), which read, "Any town board shall, on petition of the owner of a tract of land of not less than five acres in area, who has no access thereto except over the lands of others, establish a cartway not more than two rods wide connecting his land with a public road." We held that the petitioner was entitled to a cartway to the lots on which his farm was located because "[the small lot] is not used as part of [petitioner]'s farm and cannot be used as a means of access from his farm to the [public] road." *Rose*, 220 Minn. at 513, 20 N.W.2d at 348.

■ The Township attempts to distinguish *Rose* from the present case on two grounds. First, the Township emphasizes that the legal issue in *Rose* focused on a petitioner's initial entitlement to a cartway, and not on the selection of routes. This argument appears to suggest that a cartway need not give "access" to petitioner's land, so long as it connects some portion of the land to a public road. This argument is unpersuasive. The circumstances in *Rose* led this court to conclude that "[petitioner] had no access to his land except over the land of others" by virtue of the farm (the usable portion of the land) being made inaccessible by a large body of water. *Id.* at 508–09, 513–14, 20 N.W.2d at 345, 347–48. In the same way, petitioner in this case does not have access to his land by virtue of the top of the bluff being made inaccessible by a steep bluff.[2] If a selected route does not provide meaningful access to a tract of land, then it fails to satisfy the requirement that a cartway be provided. Whether a petitioner satisfies the test for access in the first place or whether a proposed route provides access under the statute are one and the same question.

The Township further attempts to distinguish *Rose* by asserting that "the nature of the property" in *Rose* is significantly distinct because the inaccessible property in *Rose* "constituted 'the bulk of relator's land' " and the inaccessible portion of petitioner's property is not the bulk of his 26.6 acres. We do not find this distinction to be persuasive. The statute does not require access to "the bulk of the tract of land" nor does *Rose* interpret the statute with that limiting language. Even though the farm lots were the bulk of the usable land in *Rose*, they were not necessarily the bulk of the petitioner's land.[3] Further, even though it is true that the land at the base and on the face of the bluff consists of the bulk of petitioner's land, that area of land is unusable for either residential or agricultural purposes, and because of its steep grade, it cannot be used to access the bluff-top property. Therefore, just as in *Rose*, the inaccessible portion of the land is actually the bulk of the petitioner's usable land. The Township is essentially arguing that the cartway statute requires a township to provide access to the majority of a petitioner's property. To read the statute in such a way would require this court to read language into the statute that is not there. We decline to do so.

2. The parties agree it is impracticable to build a road from the base of the bluff to the top of the bluff.

3. Further, the abstract of title in *Rose* suggests that the petitioner owned the lake bed in addition to the three lots surrounding the lake: "Government Lots 2 and 7, Section 23–119–24, excepting road, etc. Also all of the NE¼ of Section 23, containing another Government Lot, and riparian rights, in all there being 160 acres more or less, as former portions platted as laid, have dried up and become land." Transcript of Record, Ex. A, at 195, *Rose*, 220 Minn. at 514–15, 20 N.W.2d at 348.

We find the Township's attempts to distinguish *Rose* unpersuasive, and instead conclude that *Rose* closely parallels petitioner's case. The petitioner in *Rose* owned a tract of land with one portion of the land abutting a public roadway and another portion of the land inaccessible due to a natural obstacle (a muddy lake bed). Comparably, petitioner has land at the base of the bluff that is easily accessible by Highway 61 and another portion of the land that is inaccessible due to a natural obstacle (a steep bluff). The petitioner in *Rose* needed access to the usable portion of his land (his farm and farmhouse), and the petitioner here needs access to the usable portion of his land (the bluff top). Further, in both cases the inaccessible portions of the petitioners' land were previously accessed over neighboring land. Given the similarity of the facts of this case to the facts in *Rose*, we conclude that our statutory interpretation in *Rose* controls the outcome here. The Township acted upon an erroneous theory of law when it selected a cartway route under Minn.Stat. § 164.08, subd. 2(a), that did not provide meaningful access to petitioner's land.[4]

■ We next determine whether the court of appeals erred in establishing the location of the cartway. Having determined that the Township acted upon an erroneous theory of law when it selected a cartway route that did not provide meaningful access to petitioner's land, the court of appeals then directed the Township to establish the cartway in the location requested by petitioner. *Kennedy*, 767 N.W.2d at 33. The Township contends that the court of appeals substituted its own judgment for that of the Township Board, which is beyond the scope of judicial review.

We agree with the Township that the selection of a route is a decision allocated by statute to the Township to make in its discretion. *See* Minn.Stat. § 164.08, subd. 2(a). It is not within an appellate court's power to substitute its judgment for that of the Township in selecting a route that provides access to the usable portion of petitioner's land. We therefore reverse the court of appeals' mandate that the Township build petitioner's requested route, and we remand this case to the Township Board so that it may properly exercise its discretion under the statute.

■ Minnesota Statutes § 164.08, subd. 2(a), provides the Township with discretionary power to "select an alternative route other than that petitioned for if the alternative is deemed by the town board to be less disruptive and damaging to the affected landowners and in the public's best interest." We read this language to require that a township establish the route requested by the petitioner unless the township determines both that an alternative route will be less disruptive and damaging to neighbors *and* that the alternative route is in the public's best interest.

The only other alternative route to the usable portion of the land presented to the

---

4. The court of appeals also discussed the phrase "tract of land" in the statute and defined it as "a specified parcel of land" that could refer to "less than the total quantity of contiguous land owned by one person." *Kennedy*, 767 N.W.2d at 33. Based on this definition, the court of appeals further held that Minn.Stat. § 164.08, subd. 2(a), could be read to require a cartway to a specified portion of a petitioner's land. *See Kennedy*, 767 N.W.2d at 33. We conclude that the interpretation of that phrase was superfluous to its ultimate decision that "Kennedy is entitled to a cartway connecting the buildable portion of his property to a public road," *id.*, and therefore find it to be dicta. For that reason, we decline to analyze the plain meaning of "tract of land," or address the validity of the court of appeals' interpretation noting that it is not ultimately determinative in this case.

Board was a cartway "around either side of the perimeter" of the apple orchard. That route, the Board found, would require a cartway three times as long as one through the orchard, would cost three times as much, and required construction over a mile and a half of "rough terrain with steep slopes," necessitating "large culverts." The findings do not establish whether the alternative route is less disruptive and damaging to neighbors. Nor did the Board make findings or conclusions with regard to the public's best interest in selecting an alternative route. The public's best interest contemplates, among other factors, meaningful and usable access that will encourage owners to put land to its best possible present use. *Target Stores, Inc. v. Twin Plaza Co.,* 277 Minn. 481, 495, 153 N.W.2d 832, 841 (Minn.1967) ("public policy [ ] encourages the best possible present use of land."). Therefore, on remand, the Township must establish the cartway route requested by petitioner unless the Township determines that an alternative route will be less disruptive and damaging to neighbors and that the alternative route is in the public's best interest.

Affirmed in part, reversed in part, and remanded for further proceedings.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, G. BARRY, Justice (concurring in part, dissenting in part).

I agree with the majority that we should reverse the court of appeals and remand this matter to the Town Board for further proceedings. I disagree, however, that a town board must establish the cartway using the petitioner's preferred route, and I think it is premature to decide whether Kennedy is entitled to a cartway that provides, as the majority describes the rule, "meaningful access to [a] petitioner's land."

Minnesota Statutes § 164.08, subd. 2(a) (2008), states that a landowner "of a tract of land containing at least five acres, who has no access thereto except ... over the lands of others" may petition a town board to establish a cartway, and "the town board by resolution shall establish a cartway at least two rods wide connecting the petitioner's land with a public road." Kennedy petitioned the Town Board to establish a cartway. He asked for a cartway that would be an extension of a private road that runs from County Road 10 through Pepin Heights apple orchard and that would connect with his 5 acres of land on top of the bluff.

It is undisputed that Kennedy is entitled to *a* cartway. But Minn.Stat. § 164.08, subd. 2(a), gives a town board some discretion in establishing the location of a cartway on two conditions: "[t]he town board may select an alternative route other than that petitioned for if the alternative is deemed by the town board to be [ (1) ] less disruptive and damaging to the affected landowners and [ (2) ] in the public's best interest." Given the discretion afforded the town board, and given our historic deference to legislative decisions, *see, e.g., Lieser v. Town of St. Martin,* 255 Minn. 153, 158–59, 96 N.W.2d 1, 5–6 (1959), I agree with the majority that the court of appeals overstepped by selecting and ordering the particular route for the cartway. Nevertheless, the majority holds that "the Township acted upon an erroneous theory of law when it selected a cartway route ... that did not provide meaningful access to [Kennedy's] land." Here, I would not reach the issue of what type of access to the land the cartway must provide.

The Town Board considered Kennedy's proposed route for the cartway, along with others, and an alternative route—one that would give Kennedy access from Highway 61 to the lower portion of his property via an extension off of an existing private road. After a public hearing, the Town Board concluded that there was cause for concern "about the damages and disruption that establishing a cartway through the [orchard] would cause" and the route it selected "will require the most minimal construction ... and the least disruption to innocent adjoining property owners." The Town Board, however, provided no reasons and did not discuss why the alternative route it selected was in the public's best interest. Put another way, prior to its selection of the location for the cartway, the Town Board did not meet the second requirement in Minn.Stat. § 164.08, subd.

2(a), regarding the selection of an alternative route. Thus a remand is essential.

As noted earlier, we grant substantial deference to the legislative decisions of elected representatives, in this case, a town board. That discretion is, of course, not unfettered, and here Kennedy challenges the decision of the Town Board because, in his view, the approved cartway is useless to him. In arriving at the holding, the majority essentially adds another, unexpressed, requirement to the statute: that the petitioner is entitled to "meaningful" access to his land.[1]

But the Legislature empowered the Town Board to choose a route that is in the best interests of the public. Certainly, access to land-locked property is both in the public interest as well as the private interests of petitioner. And it is troubling, to say the least, that the Town Board

---

1. The majority rejects the Township's argument that Minn.Stat. § 164.08, subd. 2, merely requires a township to provide access to the "bulk," or majority, of a petitioner's property, because, according to the majority, "[t]o read the statute in such a way would require this court to read language into the statute that is not there." At the same time, however, the majority reads a "meaningful" access requirement into the statute.

Essentially, the majority holds that because Kennedy owns a tract of land, part of which is located at the base of a bluff and part of which is located at the top of a bluff, and Kennedy requested that the Town Board establish a cartway to the portion of the land at the top of the bluff, the Town Board must establish a cartway to the portion at the top of the bluff, though the Board may determine which route to select to the land at the top of the bluff. It is unclear to me what precisely "meaningful" access means, or who, according to the statute, would make a determination about what would constitute "meaningful" access to land.

In my view, the majority opinion elevates the undeniable interests of a landlocked property owner over the equally undeniable interests of property owners who must give up

rights, rights that enjoy constitutional protection in order to provide access to the petitioner's land.

I conclude that it is premature to state that Kennedy *must* have "meaningful" access to his land when the Town Board has not yet made a determination of what is in the public's best interest and has not yet provided a sufficient explanation of why the Board chose the route it did. *See* Minn.Stat. § 164.08, subd. 2(a) ("The town board may select an alternative route other than that petitioned for if the alternative is deemed by the town board to be less disruptive and damaging to the affected landowners and in the public's best interest."). My reading of the statute is that the Town Board is permitted to consider and select an alternative route if the Board examines the potential disruptiveness and damage to the affected landowners and determines that the alternative route is in the public's best interest. The route that the Town Board selected here may or may not be in the public's best interest, but the Board should be given the opportunity to explain why the alternative route is in the public's best interest, and why Kennedy's route is not. On this record and given the facts and findings before us, we are not in a position to dictate what is in the public's best interest.

approved a cartway that is of no apparent utility. Nevertheless, the statute speaks of disruption and damages to neighbors as well as the public interest, and this statutory language requires the Town Board to weigh competing interests and to make a legislative decision. Here, I conclude that the better course is to give the Town Board an opportunity to thoroughly explore and document not only the disruption and damages to the neighbors, but also the public interest, including as part of the public interest analysis what weight, if any, the challenges associated with access from Highway 61 and County Road 10 pose for the landowners should be given.

It may well prove to be the case that we will conclude that we should extend our holding in *State ex rel. Rose v. Town of Greenwood*, 220 Minn. 508, 20 N.W.2d 345 (1945),[2] to apply here, or that for other reasons we should reverse the Town Board's decision to essentially deny petitioner "meaningful" access to his property. But we have said that "we will not read into a statute a provision that the legislature has omitted, either purposely or inadvertently." *Reiter v. Kiffmeyer*, 721 N.W.2d 908, 911 (Minn.2006), and I hesitate to do so here, particularly prior to the Town Board making a public interest determination. Because of the apparent lack of consideration and discussion of the public interest in the alternative route selected, I conclude that it is premature to decide the issue of what access means and would remand to the Town Board to make the required public interest determination.

GILDEA, Chief Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice G. Barry Anderson.

---

2. It is worth noting that in *Rose*, the former cartway statute did not have a provision that permitted a town board to select an alternative route. *See* Minn.Stat. § 163.15, subd. 2 (1945). Nevertheless, we said in *Rose* that "the town board may exercise a reasonable discretion in varying the route proposed as the public interest may require, *provided it adheres to the termini and general course stated in the petition.*" 220 Minn. at 514, 20 N.W.2d at 348 (emphasis added). In 1993 the Legislature added the following words to Minn.Stat. § 164.08, subd. 2: "The town board may select an alternative route other than that petitioned for if the alternative is deemed by the town board to be less disruptive and damaging to the affected landowners and in the public's best interest." Act of May 19, 1993, ch. 275, § 1, 1993 Minn. Laws 1559, 1560. The Legislature's modification of the statute in 1993 to allow a town board to select an alternative route, however, does not have the wording from *Rose* that an alternative route must adhere to the termini and general course stated in a petition. This may or may not affect the applicability of our analysis from *Rose*, but the wording does reinforce that this matter should be remanded to the Town Board for a finding about what route is in the public's best interest before we overturn the Board's decision, and the wording also suggests that we would give deference to a town board's determination of what constitutes the public's best interest or what should be considered "meaningful" access to land.